**Benjamin Bradwick WELLS, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–779A203.**

Court of Appeals of Indiana, First District.

Dec. 17, 1979.

Rehearing Denied Jan. 16, 1980.

John D. Clouse and Michael C. Keating, Evansville, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Benjamin Bradwick Wells was convicted in the Vanderburgh Superior Court of robbery while armed. Wells appeals his conviction alleging numerous errors before and during the trial.

We affirm.

## FACTS

On January 17, 1978, Benjamin Bradwick Wells entered a branch of the Old National Bank in Evansville, Indiana. Wells, armed with a gun, walked to a teller and demanded that she fill a sack with money. Wells then left the bank on foot, and he was followed by the branch manager. Other witnesses saw Wells fleeing also.

Wells was charged by information with robbery while armed with a deadly weapon, pursuant to IC 1971, 35–42–5–1 (Burns Code Ed., Repl.1979). He was convicted of that offense and received a ten-year prison sentence.

## ISSUES

1. Whether the trial court erred in overruling Wells' motion to dismiss the amended information.

2. Whether the trial court erred in admitting into evidence certain of the State's exhibits because of illegal searches and seizures.

3. Whether the trial court erred by improperly restricting Wells' right to cross-examine one of the State's witnesses.

4. Whether the trial court erred by giving two of the State's tendered instructions.

## DISCUSSION AND DECISION

*Issue One*

Wells presents a number of constitutional arguments to show that the amended information should have been dismissed. Wells argues that IC 1971, 35–50–1–1 and 35–50–1A–3 [1] (Burns Code Ed., Repl.1979), which provide that the court shall fix the sentence of a convicted felon, violate his right to a jury trial under the Sixth Amendment to the Constitution of the United States and Article 1, § 13 of the Constitution of Indiana. He reasons that those constitutional provisions do not specify which issues in a criminal prosecution the defendant is entitled to have tried by jury and that, therefore, the provisions should be read to afford a trial by jury in all aspects of the prosecution.

However, our Supreme Court in *Williams v. State*, (1979) Ind., 395 N.E.2d 239, 245, reaffirmed the longstanding principle that "a defendant's right to trial by jury is not offended by a statutory scheme which does not require the jury to fix the punishment of the defendant." *See Skelton v. State* (1898) 149 Ind. 641, 49 N.E. 901; *Proffitt v. Florida* (1976) 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (opinion of Justices Stewart, Powell, and Stevens). Wells was not entitled to have his sentence determined by the jury.

---

1. Ind.Code 35–4.1–4–3 (Supp.1979).

Wells next raises three arguments relating to the sentencing provisions of our penal code. He states, first, that IC 1971, 35–50–2–3 through 35–50–2–7 (Burns Code Ed., Repl.1979) provide that a person convicted of a crime of a particular class shall serve a specified term, with a specified maximum number of years added or subtracted where the trial court finds aggravating or mitigating circumstances. Wells further notes that in each of those code sections, with the exception of IC 1971, 35–50–2–6 (Burns Code Ed., Repl.1979), the maximum number of years which may be added for aggravating circumstances exceeds the maximum number which may be subtracted for mitigating circumstances. This situation, he asserts, violates Article 1, § 16 of the Constitution of Indiana, which says, in part: " * * * Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense." Wells' argument is without merit, because, as the Supreme Court determined in *Williams, supra,* those sentencing provisions of the current penal code comply with Article 1, § 16 in this regard.

Secondly, Wells argues that the wide latitude in possible penalties, coupled with a lack of standards for determining the appropriate weight to be given each aggravating or mitigating factor,[2] invites the imposition of discriminatory penalties. Wells cites *Furman v. Georgia* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, to support his contention. This "unbridled discretion," he maintains, violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and the due course of law and equal privileges and immunities provi-

sions of Article 1, §§ 12 and 23 of the Constitution of Indiana.

We note at the outset that *Furman, supra,* is of no assistance to Wells. In *Wilson v. State* (1978) Ind., 374 N.E.2d 45, the defendant was found guilty of second degree murder and was given life imprisonment[3] by the jury.[4] Justice Pivarnik dealt with the issue of guidelines in sentencing at page 50 of 374 N.E.2d:

> "Appellant further argues that the jury was not provided with adequate guidelines to choose between a life sentence and a lesser sentence of fifteen to twenty-five years in prison for the crime of second-degree murder. He argues that the lack of guidelines makes the jury's choice of the greater sentence cruel and unusual punishment under the concept of *Furman v. Georgia* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Appellant does not demonstrate that *Furman,* which dealt with the death penalty, applies to sentences of imprisonment for murder as are involved in this case. Neither is it demonstrated that *Furman* stands for any constitutional mandate of 'guidelines' for use by the jury any time the sentencing function is undertaken. We do not believe that *Furman* so applies, and find this argument to be without merit."

Although Wilson cited *Furman* in support of a cruel and unusual punishment argument in a situation where the jury determined the penalty, Justice Pivarnik's observations are applicable to Wells' argument also.

Furthermore, Wells' allegation of constitutional violations has not established a ground for reversal. First of all, Wells

---

**2.** IC 1971, 35–50–1A–7(b) and (c) (Ind.Code 35–4.1–4–7(b) and (c) (Supp.1979)) contain nonexclusive lists of aggravating and mitigating factors which the trial court may consider in setting the sentence.

**3.** The former second degree murder statute, IC 1971, 35–1–54–1 (Burns Code Ed.), providing for a sentence of either life imprisonment or imprisonment of not less than fifteen nor more than twenty-five years, was repealed effective October 1, 1977. The current murder provision

is IC 1971, 35–42–1–1 (Burns Code Ed., Repl. 1979) and the appropriate sentencing provision is IC 1971, 35–50–2–3 (Burns Code Ed., Repl. 1979).

**4.** Under former IC 1971, 35–8–2–1 through 35–8–2–3 (Burns Code Ed.) (repealed effective October 1, 1977), the jury determined the penalty in certain cases. The court now determines the penalty for all offenses. IC 1971, 35–50–1–1 (Burns Code Ed., Repl.1979).

failed to present any kind of constitutional analysis to support his allegation. Moreover, he has not shown that the consideration of aggravating and mitigating circumstances under the statutory sentencing scheme has been prejudicial to him. Wells was convicted of voluntary manslaughter, a class B felony. IC 1971, 35–42–1–3 (Burns Code Ed., Repl.1979). Under IC 1971, 35–50–2–5 (Burns Code Ed., Repl.1979), a conviction for a class B felony carries a basic sentence of ten years to which not more than ten years may be added for aggravating circumstances and from which not more than four years may be subtracted for mitigating circumstances. Wells received the basic sentence of ten years. Consequently, we cannot see how Wells' contention that the sentencing provisions invite the imposition of discriminatory penalties is material to his case.

■ Wells next argues that under the sentencing provisions of our penal code, there is considerable overlap among the penalties for the different classes of felonies when time is added to the basic sentence for aggravating circumstances or subtracted from the basic sentence for mitigating circumstances. He contends that this overlap could result in the imposition of greater sentences for lesser included offenses. Thus, he concludes that the statutory sentencing scheme violates the proscription of cruel and unusual punishments found in Article 1, § 16 of the Constitution of Indiana and the Eighth Amendment to the Constitution of the United States.

However, the Supreme Court was unimpressed by a similar argument in *Williams, supra.* As Justice Pivarnik said at page 246 of 395 N.E.2d, the Eighth Amendment and Article 1, § 16 "require only that the maximum sentence for a lesser included offense not exceed the maximum sentence for the greater offense." Wells has not demonstrated that the statutory sentencing scheme violates the rule stated in *Williams.*

We find no reversible error in the trial court's overruling of Wells' motion to dismiss the amended information.

*Issue Two*

Wells makes two principal arguments to show that certain exhibits admitted into evidence were obtained as the result of an unlawful search and seizure in violation of the Fourth Amendment to the Constitution of the United States and Article 1, § 11 of the Constitution of Indiana.

He contends, first, that the trial court erred in admitting into evidence two search warrants and certain items seized under one of the warrants. State's Exhibit No. 66 was a warrant to search Wells' residence at 717 East Olive Street in Evansville. State's Exhibits Nos. 54, 55, and 56 were items of personal property seized during the search of the premises described in State's Exhibit No. 66. State's Exhibit No. 67 was a warrant to search the prisoner's property envelope at the Vanderburgh County Jail. Wells argues that neither the warrants, the supporting affidavit and sworn testimony, nor the returns on the warrants were properly filed pursuant to IC 1971, 35–1–6–2 [5]

5. "35–1–6–2 [9–602]. AFFIDAVIT—CONTENTS AND FORM—SWORN TESTIMONY IN LIEU OF OR IN ADDITION TO AFFIDAVIT.—(a) Except as provided in subsection (c) of this section, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished.

\* \* \* \* \* \*

(c) In lieu of an affidavit or in addition thereto, a search or arrest warrant may be issued upon sworn testimony of the same facts required for affidavits in a nonadversary hearing before a judge; the proceeding shall be recorded or transcribed by a court reporter or recording device. \* \* \* "

and 35–1–6–4.1 [6] (Burns Code Ed., Repl. 1979).

The only statutory requirement of a "filing" which Wells has brought to our attention is that in IC 35–1–6–2(a). That subsection, however, merely requires that there be "filed with the judge an affidavit," and even that requirement is only applicable where the search warrant is based upon an *affidavit* rather than sworn testimony, IC 35–1–6–2(c). The command in IC 35–1–6–4.1(a) that "[t]he officer who executed the warrant shall make a return on it *directed* to the court or judge, who issued the warrant . . ." (our emphasis) does not require a filing as does IC 35–1–6–2(a).

■ State's Exhibit No. 66, the warrant to search Wells' residence, was issued on the basis of sworn testimony given at a probable cause hearing, a transcript of which is included in the record along with the warrant and return. Consequently, the filing requirement is not applicable to State's Exhibit No. 66.

■ With regard to State's Exhibit No. 67, we note that counsel for Wells made a timely objection to the introduction of that search warrant into evidence. However, Wells' attorney expressly stated at the same time that he had no objection to the introduction of State's Exhibit No. 65, a sock hat. As far as we can determine, State's Exhibit No. 65 was the only product of the search purportedly authorized by the

search warrant in State's Exhibit No. 67. Even assuming, without deciding, that the affidavit for the warrant was not properly filed pursuant to IC 35–1–6–2(a), we find that Wells consented to the introduction of the product of the allegedly illegal search and seizure, and we can see no harm in the introduction of the affidavit, warrant, and return under the circumstances.

■ As for the requirement in IC 35–1–6–4.1(a) that the return on the warrant be directed to the issuing court, we find that Wells has demonstrated no error. A return bearing the issuing judge's signature acknowledging its receipt was attached to each warrant in State's Exhibits Nos. 66 and 67. As we noted earlier, IC 35–1–6–4.1(a) does not require that the return or any other document be filed.

■ Wells argues, secondly, that the sworn testimony given to support State's Exhibit No. 66, the warrant to search Wells' residence at 717 East Olive Street, is nearly all hearsay and that the testimony failed to provide a sufficient factual basis for the issuing court's finding of probable cause as required by the Constitutions of the United States and Indiana, IC 35–1–6–2, *supra*, and *Madden v. State* (1975) 263 Ind. 223, 328 N.E.2d 727.

The statutory standard [7] for the use of hearsay in establishing probable cause to support a search warrant is found in IC 35–1–6–2(a), [8] which says, in pertinent part:

6. "35–1–6–4.1. INITIAL DISPOSITION OF WARRANT AND PROPERTY SEIZED. When the warrant is executed by the seizure of property or things described in it or of any other items:
(a) The officer who executed the warrant shall make a return on it directed to the court or judge, who issued the warrant, and this return must indicate the date and time served and list the items seized.
(b) The items so seized shall be securely held by the law enforcement agency whose officer executed the search warrant under the order of the court trying the cause, except as provided in section 5.1 [35–1–6–5.1] of this chapter.
* * *"

7. Wells also quotes from *Madden, supra*, in his attempt to lay out the standard for use of hearsay in establishing probable cause. We

note, however, that the three specific requirements stated in *Madden* are taken from IC 35–1–6–2 prior to its amendment by Acts 1977, P.L. 333, § 1, effective August 29, 1977. We will rely upon the statutory standard as modified by that amendment because the alleged robbery occurred on January 17, 1978.

8. Although we held earlier in this opinion that the filing requirement for affidavits found in IC 35–1–6–2(a) does not apply to sworn testimony given in lieu of an affidavit pursuant to IC 35–1–6–2(c), those two subsections do overlap in another respect. Subsection (c) expressly provides that "a search or arrest warrant may be issued upon sworn testimony of the same facts required for affidavits . . . ." Consequently, the hearsay limitations apply to sworn testimony as well as to an affidavit.

" * * * When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished."

The sworn testimony of Officer James Stroud of the Evansville Police Department reveals that the robbery was reported by Mr. Hastings, an official of the bank branch where the robbery occurred. Hastings gave a description of the robber to the police. Wells argues that this information cannot be used to support the warrant because Officer Stroud did not state that Hastings spoke with personal knowledge or that he knew Hastings to be a credible person and the reasons for such belief. However, we find that under these particular circumstances Hastings was a credible person whose statements regarding the robbery were reliable. It is reasonable for an official of a bank branch which has been robbed to be the person who reports the robbery to the police. This information satisfies the requirements of IC 35–1–6–2.

Officer Stroud testified that a confidential informant, who had given the police valid information on numerous crimes in the past, told him that he had observed the robber being chased by a bank employee and had spoken with him briefly. The confidential informant also described the robber's attire. The informant later identified Wells' photograph as depicting the person he had seen after the robbery. Wells does not assail the credibility of the confidential informant's statements. He asserts, rather, that this information would at most support an arrest warrant, but it could not be sufficient to authorize a search of 717 Olive Street. We agree that, by themselves, the confidential informant's statements are insufficient to support the issuance of the search warrant. However, they are helpful in connection with other testimony—as we shall see shortly—in identifying the suspect in order to show probable cause for searching his residence.

■ Officer Stroud also testified that another Evansville police officer, David Cook, told him that after the robber's description was relayed over police radio, he spoke with Wells while canvassing the neighborhood. Like the confidential informant, Officer Cook identified Wells' photograph later. Wells maintains that Officer Stroud's account of what Officer Cook told him is deficient in that he failed to assert that Officer Cook was a credible source of information. However, the credibility of Officer Cook did not have to be specifically established here because the witness at the probable cause hearing was a police officer who was supplied with information by another police officer who had personally participated in the investigation. *See Spears v. State* (1978) Ind., 383 N.E.2d 282.

■ According to the police and court records, Wells was on probation from a conviction for burglary of a pawn shop at the time he committed the bank robbery. Officer Stroud testified that the probation department informed Captain Tenbarge that Wells resided at 717 Olive Street. Wells complains that this testimony fails to state who in the probation department supplied Captain Tenbarge with Wells' address, how he or she determined Wells' residence, and whether Officer Stroud believed that the unnamed person and Captain Tenbarge were reliable and credible. We do not see how the manner in which Officer Stroud obtained Wells' address could be prejudicial to Wells or fatal to the search warrant in this particular case. A person's address is the kind of information which can readily be obtained from telephone books and other directories. Moreover, IC 1971, 35–7–2–1(11) (Burns Code Ed., Repl.1979) provides that as a condition of probation, the court may require the person to notify the court or his probation officer of any change in his address. The probation officer is charged with keeping himself informed with regard to the conduct and condition of each person under his supervision. IC 1971, 35–7–2–4 (Burns Code Ed., Repl.1979).[9] As a result, it was reasonable for the probation depart-

9. Repealed by Acts 1979, P.L. 120, § 22, effective October 1, 1980.

ment to have a record of Wells' current address. Captain Tenbarge, who received the address from the probation department and who relayed it to Officer Stroud, was apparently a member of the Evansville Police Department. We find no credibility or reliability problem in Officer Stroud's testimony concerning Wells' address.[10]

 Wells further asserts that the fact that a person may have committed a crime should not automatically create probable cause to search his residence. He maintains that it is illogical to assume that a criminal will hide the fruits and instrumentalities of the crime at his place of residence. We disagree. Such is not necessarily the case, especially with regard to instrumentalities or other evidence of the crime. Officer Stroud knew that Wells resided in Evansville, the same city in which the bank robbery occurred. He received descriptions of the clothing Wells was wearing during and immediately after the robbery. We cannot say that there was not probable cause to believe that Wells would return to his residence at sometime after the robbery and leave clothing or other evidence or instrumentalities of the crime.

 Finally, Wells alleges that the only evidence of his residence given in the probable cause hearing was Officer Stroud's testimony to the effect that Wells lived at 717 Olive Street. This, he maintains, was insufficient to satisfy the requirement in Article 1, § 11 of the Constitution of Indiana, the Fourth Amendment to the Constitution of the United States, and IC 35–1–6–2 that the place to be searched be described with particularity. We, however, find that the description given complied with those constitutional and statutory provisions.

Wells has not demonstrated that the trial court committed reversible error in admitting State's Exhibits Nos. 54, 55, 56, 66 and 67 into evidence.

*Issue Three*

Wells maintains that the trial court restricted his cross-examination of Officer David Cook of the Evansville Police Department in violation of his right to confront witnesses against him under Article 1, § 13 of the Constitution of Indiana and the Sixth Amendment to the Constitution of the United States. Officer Cook, a prosecution witness, had testified on direct examination that he saw Wells on the day of the robbery. On cross-examination, Officer Cook stated that he recalled having testified in an earlier, unrelated case that prior to an incident in which he shot another person, he had consumed some beer. However, when asked whether he had had any alcoholic beverages on the day of the bank robbery and whether he had had, at any time around the time of the bank robbery anything to drink while on duty, Officer Cook responded in the negative. Counsel for Wells then asked, "When were you suspended for drinking on duty?" The State objected, but counsel for Wells argued that the purpose of the question was to explore Officer Cook's powers of observation and not to impeach his character. Nevertheless, the trial court sustained the State's objection.

 The general rule is that a witness may not be impeached by proof of specific, extraneous acts of misconduct which have not been reduced to convictions. *Swan v. State* (1978) Ind., 375 N.E.2d 198; *Peaches v. City of Evansville* (1979) Ind. App., 389 N.E.2d 322. In particular, our Supreme Court has held that it was proper for the trial court to prohibit, by means of motions *in limine*, any reference to a pending investigation of misconduct on the part of two police officers who testified for the State. *Banks v. State* (1976) 265 Ind. 71, 351 N.E.2d 4. However, as Wells suggests, "[t]he credibility of a witness may be attacked by showing a defect of capacity in the witness to observe, remember or re-

---

10. Wells also complains about Officer Stroud's reliance upon the statement of an anonymous tipster that the person who robbed the bank was on probation for burglary of a pawn shop and was then at 717 Olive Street. Assuming,

*arguendo*, that this information could not support the search warrant, we have determined that there was other, sufficient information on which Officer Stroud properly relied.

count the matters testified about." *Lusher v. State* (1979) Ind.App., 390 N.E.2d 702, 704.

It was proper for Wells to ask whether Officer Cook had consumed any alcoholic beverages around the time of the robbery, for that might reflect on the witness's ability to accurately identify Wells. Wells further contends, however, that the alleged disciplinary action for drinking on duty would be relevant to Officer Cook's ability to observe and to the veracity of his denial that he had been drinking around the time of the robbery. The trial court has discretionary power to control the scope of cross-examination. Its exercise of that power will only be reversed where there has been a clear abuse of discretion or an obvious error. *Smith v. State* (1974) 160 Ind. App. 622, 312 N.E.2d 896. In light of our rule against impeachment by prior misconduct not reduced to a conviction, we cannot say that the trial court abused its discretion or committed an obvious error by sustaining the State's objection to Wells' question about the prior disciplinary action. Officer Cook had already denied having consumed any alcoholic beverages around the time of the robbery. If Wells had proof that the alleged drinking on duty or any other consumption of alcoholic beverages by Officer Cook occurred proximate in time to the robbery and might have impaired Officer Cook's power to observe, Wells could have introduced this evidence during his case-in-chief.[11] We find no reversible error in the trial court's ruling.

*Issue Four*

Wells complains that State's Instruction No. 1, especially the last sentence, lacks mutuality in that it "gives undue prominence to the theory of the State's case." State's Instruction No. 1 provides as follows:

"While it is necessary that every essential element of the crime charged against the accused must be proved by the evidence beyond a reasonable doubt, this does not mean that all incidental or sub-sidiary facts must be proved beyond a reasonable doubt. Evidence is not to be considered in fragmentary parts, and [sic] though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of the testimony is to be determined from the whole body of the evidence. A circumstance considered apart from other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances, it may be so well supported as to remove all doubt as to its existence. Acts considered apart from other evidence may appear innocent, but when considered with other evidence may import guilt."

The brief of the appellant in *James v. State* (1976) 265 Ind. 384, 354 N.E.2d 236, reveals that a similar criticism was made concerning a virtually identical instruction. The Supreme Court there found no error in the giving of that instruction, and we find no error here, either.

Wells also maintains that State's Instruction No. 4 fails to state that conflicting testimony should be reconciled in favor of the defendant's innocence, if such a reconciliation is reasonable. Consequently, he asserts that the instruction conflicts with Defendant's Instructions Nos. 3 and 6 and was, therefore, confusing or misleading with regard to the jury's duty.

State's Instruction No. 4, as modified, provides as follows:

"If the conflicts in testimony cannot be resolved, you may believe one witness and disbelieve another. You may believe a part of what one witness says and disbelieve a part, but you should not disregard the testimony of any witness without good cause. You should give the testimony of all witnesses careful consideration and give it such weight and credit as it is entitled to, considering the other testimony and the circumstances of the case."

---

11. *McCormick's Handbook of the Law of Evidence* § 45 (2d ed. E. Cleary ed. 1972).

Defendant's Instruction No. 3 says:

"I instruct you that if there is a conflict of evidence, and you cannot determine a fact in your own minds from the evidence, then you should give the benefit of the doubt to the defendant. Therefore, if the evidence in this case, on any material point necessary to a conviction, is so conflicting that you cannot determine whether he is guilty or innocent, you should give the defendant the benefit of the doubt."

Defendant's Instruction No. 6 reads as follows:

"If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to the defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt."

As the State suggests, the principle stated in State's Instruction No. 4 is different from and is a prerequisite to the rules laid out in Defendant's Instructions Nos. 3 and 6. State's Instruction No. 4 deals with the credibility of and weight to be given to the testimony which the jury heard at trial. Defendant's Instructions Nos. 3 and 6 are applicable after the jury has considered all of the evidence and has determined how much of the testimonial evidence is credible. Then, if the jury cannot decide between two conflicting groups of credible evidence or two reasonable, conflicting interpretations of the evidence, they must give the

benefit of the doubt to the defendant. When those instructions are considered together in this manner rather than in isolation, it is clear that they do not conflict and are not confusing.

Wells has not presented any error in the instructions given to the jury.

Judgment affirmed.

ROBERTSON and NEAL, JJ., concur.