**Rodney E. BAKER, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 981S244.

Supreme Court of Indiana.

June 21, 1983.

William G. Smock, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Linda M. Collins, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted of rape and robbery. He was sentenced to a thirty (30) year term of imprisonment, enhanced by twenty (20) years for the rape conviction. He was sentenced to a ten (10) year term of imprisonment, enhanced by ten (10) years for the robbery conviction. The sentences were ordered to be served concurrently.

The record reveals that on August 10, 1980, the victim, L.C., heard glass breaking as she prepared for bed at approximately 4:00 A.M. When she walked into the living room, she was met by a man who had broken a window and gained entry through a front door. The man, later identified as appellant, ordered her to disrobe at knife point. After raping L.C., he threatened to kill her if she telephoned anyone. Appellant took a watch and old coins as he left. However, he returned a few minutes later demanding money for gasoline or that L.C. provide transportation. The victim convinced him that she had called for help and that he should leave.

Appellant claims the trial court erred in admitting State's Exhibit 7. The exhibit consists of the hospital record of the examination and laboratory reports of L.C. The exhibit stated that sperm was present. Appellant first contends the exhibit was inadmissible because it contained hearsay and an adequate foundation had not been established.

Appellant also claims the State failed to establish a proper chain of custody regarding the specimens taken from the victim and tested by the laboratory. Under many circumstances records kept in the routine course of business may be introduced into evidence merely by the identification of one authorized to keep such records. *See, Pitts v. State,* (1982) Ind., 439 N.E.2d 1140. However, such records may not be used to establish the questioned authenticity of conclusions stated in the record. Although the specimens taken from L.C. and tested in the laboratory were not offered in evidence, the State cannot be permitted to present the conclusory fact that sperm was present in the specimens merely by presenting a hospital record stating that conclusion.

It was incumbent upon the State to present evidence of the doctor or someone in authority present at the taking of the specimens from L.C., and to further demonstrate a chain of custody of the specimens to the laboratory where the testing was made and the conclusions drawn. *See, Rinard v. State,* (1976) 265 Ind. 56, 351 N.E.2d 20. *See also,* 21 A.L.R.2d 1238, wherein it is stated:

"Accordingly, a hospital record containing an expert's analysis of a part removed in the operating room is not admissible where the only evidence of the identity of the person from whom it was taken was the testimony of the analyst that he received said part from a nurse, that it was then wrapped in gauze and labeled with the plaintiff's name, that this was the regular hospital routine and that all tissue removed in the operating room was thus examined and the result made a part of the hospital records, since no foundation was laid for the receipt of such evidence by showing the reason for the absence from the witness stand of said nurse, who had received the part from the operating surgeon, labeled it and delivered it to the expert. *Clayton v. Metropolitan Life Ins. Co.* (1938) 96 Utah 331, 85 P.2d 819, 120 A.L.R. 1117 . . . ."

In *Arnold v. State,* (1982) Ind., 436 N.E.2d 288, this Court recited the need for a continuous chain of custody of fungible evidence. In that case the State moved to admit a "rape kit" assembled by a physician and other medical personnel in the emergency room of the hospital. The physician testified that in the course of his examination the rape kit was put together in the emergency room. A serologist testified that she subjected the contents of the kit to testing. Thus, a chain of custody was clearly established in *Arnold, supra.*

█ In *Arnold* this Court did make a statement, citing cases, by way of *dictum* that "[t]he rule operates, however, only for the period after the evidence comes into possession of law enforcement personnel." However, the cases cited had to do with, in one instance, a knife thrown into a ditch by a defendant and, in another instance, a gun thrown into a trash container by a defendant. In each instance the claim was made that there was a break in the chain of custody from the time the defendant threw the weapon away until the police picked it up. Of course, the statement that the chain of custody does not begin to run until police take custody of the object is clearly correct under such circumstances. However, the statement is not applicable to the chain of custody of medical exhibits or the result thereof, such as are in the case at bar or in the *Arnold* case. We point this out in order that the *dictum* in *Arnold* not be misleading.

█ It was error for the trial court to allow State's Exhibit 7 in evidence with a total absence of proof of the chain of custody of the exhibits referred to therein. However, in view of the overwhelming amount of evidence in this case, totally independent of State's Exhibit 7, we hold the erroneous admission of that exhibit was harmless error.

█ In the first place the presence of sperm in a rape victim is totally unnecessary for a conviction of rape. Penetration of the victim is all that is necessary. *Tillman v. State,* (1980) Ind., 408 N.E.2d 1250.

Further, in addition to the positive identification of appellant by the victim, a neighbor testified that a person fitting the description of the defendant was seen parking his car across the street from the victim's home and walking across the street. Shortly thereafter the witness heard glass breaking, heard the victim screaming and called police. It was in response to this call that police arrived a short time later and took the victim to the hospital. In view of all the evidence in this record, it is highly improbable that the erroneous admission of State's Exhibit 7 had any effect whatever on the conviction of appellant.

Appellant claims the trial court erred in admitting the testimony of two witnesses who identified appellant as the man who raped them on separate occasions. "Although not admissible to show a defendant's propensity to commit crimes in general, evidence of prior crimes is admissible, if it is relevant to some issue in the case, most commonly intent, motive, knowledge, plan, identity or credibility." *Brewer v. State,* (1981) Ind., 417 N.E.2d 889, 893, citing *Lawrence v. State,* (1972) 259 Ind. 306, 286 N.E.2d 830.

█ L.C., the victim in the case at bar, and D.O. and D.M. unequivocally identified appellant as the man who raped them. While dissimilarities exist in the facts surrounding all three rapes, we conclude by comparing the offenses involving D.O. and D.M. to L.C., the facts are sufficiently similar to permit admission of the testimony of the victims of the uncharged offenses.

All three victims gave similar descriptions of their assailant. The rapes of D.O. and L.C. occurred at 3:30 A.M. and 4:00 A.M. respectively. In both cases, appellant fled by using a vehicle. He used a knife in both instances after robbing the victims. Appellant spoke similar endearments to L.C. and D.O. Appellant gained entry through an open door in the rape of D.M. and broke the glass in the locked door in the rape of L.C. He threatened both women with death. He stated to D.M. that his name was Edward G. Smith. He gave the name of Randall C. Smith to L.C. All three

rapes occurred within eighteen days. The trial court did not err in admitting the testimony of D.O. and D.M. in that they tended to show a common scheme or plan and identity of appellant.

Appellant alternatively argues the testimony of D.O. and D.M. should have been suppressed as "fruit of the poisonous tree," *Wong Sun v. United States,* (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, because the testimony was the result of an allegedly illegal arrest warrant and subsequent detention.

Following her rape, D.O. viewed photographs of possible suspects. She tentatively identified appellant from a photograph of poor quality. She believed she could make a positive identification if a more clear photograph could be displayed. Acting upon this information, Detective Selinger presented an affidavit of probable cause requesting an arrest warrant be issued for appellant "pursuant to *Davis v. Mississippi,*" (1969) 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676. The affidavit recited the facts surrounding the rape of D.O., her description of her assailant and that she had chosen appellant's photograph stating "it was a good likeness but she wasn't sure due to poor quality." The affidavit further recited that the victim's car, taken by her assailant and reported stolen, was found burning. Upon viewing the photograph, a witness to the fire stated "he thought the man in the photo was the same man he saw walking away from the victim's auto." Due to the poor quality of the photograph, the witness was unsure.

The affidavit requested a warrant be issued for the purpose of obtaining a photograph of appellant to present to the victim and the witness for identification. The court issued an arrest warrant, finding there was "sufficient and probable cause under *Davis v. Mississippi* [citation omitted] to arrest [appellant] for the sole and only purpose of fingerprinting and photographing [appellant] and for the purpose of placing that photograph with an array of other photographs for the purpose of identification by the witness(es)." The warrant directed that appellant was to be released immediately following fingerprinting and photographing. The law enforcement officials complied with the language of the warrant. All three rape victims positively identified appellant as their assailant from the photographic display containing appellant's photograph obtained pursuant to the arrest warrant.

Appellant contends the warrant process and detention were illegal. Thus, the identifications should have been suppressed. Both appellant and the State support their arguments with *Davis v. Mississippi, supra,* the case on which the court relied in issuing the warrant. The United States Supreme Court in *Davis, supra,* excluded fingerprints which identified the appellant as the rapist of an elderly victim who could not provide any description other than her assailant was a black youth. Finger and palm prints had been lifted from a window sill, the point of entry into the victim's home. The police took, without warrants, at least twenty-four black youths to the police station. The youths were questioned, fingerprinted and released without charge. Forty to fifty other young blacks were interrogated either at police headquarters or at school.

Without warrant or probable cause for the arrest, the police drove the fourteen year old appellant ninety miles to Jackson, Mississippi, and confined him overnight. During his two day incarceration, appellant was again fingerprinted. These prints, with the prints of the other twenty-three sets previously obtained from the other black youths, were sent to the FBI for comparison. Appellant's prints matched those lifted from the scene of the offense. The Supreme Court, in holding the Fourth Amendment applicable to investigatory seizures, emphasized that no attempt had been made to employ procedures comporting with the Fourth Amendment requirements: the detention of appellant and other young blacks was not judicially authorized; appellant was subjected to two fingerprint sessions; appellant was interrogated as well as fingerprinted and detained. The Court expressly declined to address "whether the

requirements of the Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest," *Davis, supra,* 394 U.S. at 728, 89 S.Ct. at 1398, 22 L.Ed.2d at 681. The court stated, however, that the proposition was "at least arguable."

*Davis* condemned the "dragnet" procedure utilized by law enforcement which is readily distinguishable from the process presented in the case at bar. The detention and photographing were judicially authorized. The judge issued the arrest warrant after reviewing the probable cause affidavit filed by the investigating officer which recited the facts set forth above. The warrant specified the procedures to be performed. Moreover, the order directed the police to immediately release appellant upon completion of the photographing and fingerprinting session. The photograph was directed to be placed with others in a photographic array to be displayed to the victim. The record reveals no evidence of interrogation, duplicate processes or any violation of the arrest warrant.

We hold the procedure used to procure appellant's photograph for identification purposes did not violate the Fourth Amendment. His assertion that the testimony of D.O. and D.M. must be suppressed as "fruit of the poisonous tree" is without merit.

Appellant claims the warrant was defective because the probable cause affidavit was not incorporated into the search warrant contrary to *McCallister v. State,* (1974) 159 Ind.App. 340, 306 N.E.2d 395.

In *McCallister,* the Court of Appeals held a search warrant invalid for its failure to contain a copy of the probable cause affidavit in the body of the search warrant or in any other way make it an integral part of the search warrant as set forth in I.C. § 35–1–6–3 [Burns 1956 Repl.]. (For present law, *see* I.C. § 35–33–5–1 [Burns 1982 Supp.].)

The gist of the requirement in I.C. § 35–1–6–3 [repealed Acts 1981, P.L. 298, § 9] is to require a specific description of the place to be searched and the persons or things to be seized. *McCallister, supra.* A search warrant vesting discretion in a law enforcement officer is void. *Brown v. State,* (1959) 239 Ind. 358, 157 N.E.2d 174. *McCallister, supra.* In enacting the current statute I.C. § 35–33–5–3 [Burns Supp.1982], the legislature recognized this rationale. The statute setting forth the form of the warrant no longer calls for copying the probable cause affidavit into the body of the warrant or in some other way making it an integral part of the warrant but only requires description of the place to be searched and the property which is the subject of the search.

In the case at bar, the probable cause affidavit and the warrant were not attached. The warrant refers to the affidavit having been filed. The warrant states "the court upon examining the probable cause affidavit found sufficient probable cause . . . to arrest [appellant] for the sole and only purpose of fingerprinting and photographing." The warrant particularly describes appellant and the "search" to be conducted. There is no lack of specificity. No prohibited discretion in the execution of the warrant is vested in the police. We conclude the warrant is not fatally defective.

Appellant claims the warrant is defective because the probable cause affidavit did not affirmatively state that the individuals quoted in the affidavit spoke with personal knowledge of the facts stated therein. Appellant erroneously relies on *Madden v. State,* (1975) 263 Ind. 223, 328 N.E.2d 727. I.C. § 35–1–6–2 has since been twice amended. The law applicable in *Madden* was amended by Acts 1977, P.L. 333, § 1, effective August 29, 1977. The amendment deleted the previous requirement that the probable cause affidavit contain "affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein." In *Wells v. State,* (1979) Ind.App., 397 N.E.2d 1250, the affi-

ant, a police officer, did not state the official of a bank branch where the robbery occurred spoke with personal knowledge or that he knew the manager was a credible person and the reasons for such belief. Noting the deletion from the statute effective in *Madden, supra,* the Court of Appeals held under the factual circumstances the branch manager was credible and his statements regarding the robbery and his description of the robber reliable. "It is reasonable for an official of a bank branch which has been robbed to be the person who reports the robbery to the police." *Wells, supra,* at 1257.

Similarly, it is reasonable to presume the rape victim and a witness who saw appellant walk away from the victim's burning car to be credible persons, speaking reliably of facts within their knowledge. The probable cause affidavit stated the witnesses "informed the affiant of facts and answers to the affiant's questions which were straight forward and which appeared to be true and accurate accounts to the best of their recollections." The probable cause affidavit was sufficient to support the issuance of the order.

Appellant contends I.C. § 35–1–6–1 and I.C. § 35–1–6–2 [1979 Burns Repl., repealed by Acts 1981, P.L. 298, § 9] which authorized the issuance of search and arrest warrants do not allow for the seizure of an individual for the purpose of taking his photograph. In *McClain v. State,* (1980) Ind., 410 N.E.2d 1297, we analyzed the validity of a warrant to examine appellant's person for gonorrhea. Needless to say, this Court has recognized warrants for a search of the person for evidence.

Appellant presents identical allegations of error with respect to the victim's identification as the product of an illegal detention. The determinations we have made above are dispositive of the issues repeated by appellant.

The trial court is in all things affirmed.

HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.

PRENTICE, J., dissents.