Jackson A. CLIFFORD, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1282S511.

Supreme Court of Indiana.

Feb. 22, 1985.

James G. McDonald, Jr., Princeton, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Criminal Deviate Conduct, a class B felony, Ind.Code § 35-42-4-2 (Burns 1979) and was sentenced to twelve (12) years imprisonment. His direct appeal presents fourteen (14) issues for our review, one of which compels us to reverse his conviction.

The record discloses that on December 22, 1981, the Defendant and his wife reported to the police that their twelve (12) year old daughter, R.C., was missing. Subsequently, at approximately 9:30 that evening, Police Officer Dennis McGraw received a dispatch which informed him of R.C.'s whereabouts. When Officer McGraw located R.C., she told him that she would not go home to a father who abused her sexually and a mother who hated her.

At the police station McGraw spoke with the Defendant and his wife, and it was determined that R.C. would go home with her parents. McGraw then prepared his report which was forwarded to the county welfare department. Thereafter, on February 24, 1982, McGraw, Captain George Ballard, and Debra Corn of the welfare department met with R.C. and took a taped statement from her. R.C. told them that the Defendant, her father, had inserted his finger into her vagina a few days before she had run away from home on December 22. She further detailed a two to three year history of sexual abuse of her by her father. Specifically, she described incidents when he had shown her sexually explicit movies and magazines and had inserted sexual devices into her vagina. Upon receiving this information, Officer Ballard sought a search warrant which was issued on March 2, 1982. As a result of the search, police officers seized sexually explicit books, magazines, films, rubber sexual devices, and other sexual paraphernalia.

On March 3, 1982, the State filed its information, charging the Defendant with child molesting, a class D felony, Ind.Code § 35-42-4-3, as follows:

"On or about the 21st day of December 1981, at the County of Gibson, in the State of Indiana. (sic) Jackson A Clifford Jr. being at least 16 years of age, did perform fondling and touching with [R.C.] twelve (12) years of age, by inserting his finger into her vagina with intent to arouse or to satisfy the sexual desires of Jackson A. Clifford, Jr."

After the Defendant had been arraigned and had pled not guilty, the State amended its information, charging Defendant with unlawful deviate conduct, a class B felony, Ind.Code § 35-42-4-2, as follows:

"On or about the 21st day of December 1981, at the County of Gibson, in the State of Indiana, Jackson A. Clifford, Jr. knowingly and intentionally cause (sic) penetration, by his finger, of the sex organ of [R.C.], a child of twelve (12) years of age and being so mentally deficient, by reason of her age, that she could not consent to such conduct."

Defendant argues that the amendment was prohibited by Ind.Code § 35-3.1-1-5(e) (Burns 1979) (since repealed) which provides:

"Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the offense charged; nor may an indictment or information be amended after arraignment for the purpose of curing a failure to charge or state an offense or legal insufficiency of the factual allegations."

■ Defendant argues that the amendment was prohibited by the above statute because it altered the potential penalty and claimed a separate and distinct statutory

violation. The State, on the other hand, argues that the Defendant "was apprised at all times that he was accused of inserting his finger into the vagina of the twelve-year-old [R.C.] on or about December 21, 1981."

We agree with the State that Defendant was aware of the facts upon which he was charged; however, we find that the dispositive issue is whether a change in the potential penalty upon conviction of the crime charged changes the theory of the case or the identity of the offense charged.

Defendant was initially charged with child molesting, a class D felony. The penalty upon conviction of a class D felony is imprisonment for two years with not more than two years added for aggravating circumstances and a potential fine of not more than $10,000. The court also has the alternative of entering judgment of conviction of a class A misdemeanor and sentencing accordingly. Ind.Code § 35–50–2–7 (Burns 1979). When the information was amended, Defendant was charged with criminal deviate conduct, a class B felony, the penalty for which is ten years imprisonment with not more than ten years added for aggravating circumstances nor more than four years subtracted for mitigating circumstances and a possible fine of not more than $10,000. Ind.Code § 35–50–2–5 (Burns 1979). Hence, while the factual allegations underlying the two informations in the case at bar were the same, the potential penalties were not.

In *Marts v. State*, (1982) Ind., 432 N.E.2d 18, this Court held that a post arraignment amendment of the information did not violate Ind.Code § 35–3.1–1–5, noting, "Both before and after the amendment Defendant was charged with the delivery of cocaine in the amount of three grams or more. The amendment *did not alter the potential penalty*, the offense charged, or the available defenses, and the trial court committed no error in allowing it." *Id.* at 20–21. (emphasis added). In *Trotter v. State*, (1981) Ind., 429 N.E.2d 637, 640, we held that amending an information for a class B robbery to a class A robbery after arraign-

ment was improper inasmuch as to do so changed the theory of the prosecution. In *Tolbert v. State*, (1982) Ind.App., 442 N.E.2d 718, 720, a second amendment of the charging information was held not improper inasmuch as it merely returned the information to its original form. The court therein, however, noted that the first amendment, changing the charge from a class B robbery to a class C robbery, did change the theory of the case from that originally charged. We find these cases to be persuasive and hold that changing the potential penalty by amending the charging information constituted a change in the theory of the case and in the identity of the offense. *See also Gillie v. State*, (1984) Ind., 465 N.E.2d 1380.

The cases cited by the State in support of its position are distinguishable from the case at bar. In *Carson v. State*, (1979) 271 Ind. 203, 205, 391 N.E.2d 600, 602, we held that the trial court did not err in permitting the information which alleged that the appellant "did unlawfully, feloniously and wilfully abuse" a child to be amended to substitute the words "be cruel to" for the word "abuse" to bring the information into conformity with the precise language of the statute under which the appellant was charged. In *Buttram v. State*, (1978) 269 Ind. 598, 601, 382 N.E.2d 166, 169, we found no error in allowing an amendment to an indictment to substitute for the words "do on" the words "touch one." In neither of those cases, however, was there a change in the potential penalty. Moreover, the State's reliance upon *Buck v. State*, (1983) Ind., 453 N.E.2d 993, is misplaced. As the Defendant points out in his reply brief, the Court considered an amendment to the charging information which changed the section of the Code under which appellant was charged from § 35–42–4–2 (unlawful deviate conduct) to § 35–42–4–3 (child molesting) to be proper because the incorrect statutory citation on one part of the information was the result of a typographical error and the change did not substantially impair the appellant's rights.

We are compelled to hold that the trial court erred in permitting the amendment and that the Defendant was convicted of a crime for which he was not properly charged. His conviction is reversed.

To guide the trial court upon retrial, we address the following issues, which we have renumbered and consolidated, as follows:

(1) Whether items seized from the Defendant's home pursuant to a search warrant should have been suppressed because

(a) the search warrant failed to describe particularly the items to be seized (Defendant's Issue II);

(b) the items seized were not properly seizable (Defendant's Issue X);

(c) the affidavit upon which the court based its determination of probable cause did not establish the credibility of the source of the information (Defendant's Issue XII);

(d) no probable cause existed for the issuance of the warrant (Defendant's Issues XI and XIII);

(2) Whether testimony regarding items seized pursuant to the search warrant was relevant;

(3) Whether the State's response to the Defendant's notice of alibi was proper;

(4) Whether the trial court erred in allowing the victim to give testimony regarding a prior sexual incident with the Defendant;

(5) Whether the trial court erred in denying the Defendant's motion for a court appointed psychiatrist to examine the prosecuting witness;

(6) Whether the trial court erred in allowing the jury to view a particular film;

(7) Whether the trial court erred in its *voir dire* examination of potential jurors.

## ISSUE I

Following a hearing, Defendant's motion to suppress from evidence items of sexual paraphernalia seized pursuant to a search warrant was denied. Defendant assigns such ruling as reversible error.

The search warrant authorized officers to search for "movies depicting obscene sexual conduct, magazines depicting obscene sexual conduct, movie projector and rubber sexual devises (sic)" and was issued by the Gibson Circuit Court upon the following affidavit:

"AFFIDAVIT FOR SEARCH WARRANT

George Ballard, being first duly sworn says that he believes and has good cause to believe that there are movies depicting obscene sexual conduct, magazines depicting obscene sexual conduct, movie projector, and rubber sexual devices located in and about the premises, described as follows: a white frame house, with aluminum siding, black shutters and enclosed porch, located at 901 South Seminary Street, Princeton, Gibson County, Indiana, and further described as being Lot 165 in Southside Addition to the City of Princeton, Gibson County, Indiana.

"This affiant makes the above allegations on the basis of the following facts, to-wit:

"1. George Ballard is employed by the Gibson County Sheriff's Department and has been for approximately 6 years.

"2. That on the 24th day of February 1982, this affiant talked with [R.C.],[1] a 12 year old girl, and that the said [R.C.] told this affiant that she had been sexually assaulted by Jackson A. Clifford, Jr. on or about the 21st day of December 1981.

"3. [R.C.] further told this affiant that said sexual abuse had been going on since she was approximately 10 years of age and that on certain occasions Jackson A. Clifford, Jr. would display magazines depicting obscene sexual conduct to her and the said Jackson A. Clifford, Jr. would also show movies depicting obscene sexual conduct by means of a projector prior to or simultaneous with his sexual assaults on [R.C.]. Furthermore [R.C.] told this affiant that Jackson

1. "R.C." here substituted for name in original affidavit.

A. Clifford, Jr. would insert rubber sexual devices into her vagina while the said Jackson A. Clifford, Jr. was showing movies depicting obscene sexual conduct.

"4. That [R.C.] told this affiant that the above mentioned magazines, movies, projector and rubber sexual devices are located in the premises heretofore described.

"5. That your affiant believes [R.C.] is telling him the truth in this matter because she is implicating Jackson A. Clifford, Jr., her father, in the crime of child abuse.

"6. That your affiant believes that said described items would be evidence in criminal charges against the defendant and that further your affiant believes that said items, being of a portable nature, may be removed and destroyed as potential evidence in any criminal action.

"Further affiant saith not.

(signed)
George Ballard

"Subscribed and sworn to before me, the Prosecuting Attorney, in and for said county and state, this the 2nd day of March, 1982.

(signed)
George Ankenbrand,
Prosecuting Attorney"

■ Defendant first argues that the items should have been suppressed because the terms of the warrant violated the Fourth Amendment and Indiana Code § 35-1-6-1 (Burns 1979) [repealed effective September 1, 1982; amended and recodified at Ind.Code § 35-33-5-1 (Burns Supp. 1984)], which provides, in pertinent part:

"A Court may issue warrants upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized[.]"

He argues that the warrant failed to describe particularly the items to be seized, inappropriately leaving that decision to the discretion of the police officers. He relies upon the holding in *Lo-Ji Sales, Inc. v. New York*, (1979) 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920, to support his argu-

ment. In *Lo-Ji Sales*, the Supreme Court held that the Fourth Amendment does not permit a search warrant to leave entirely to the discretion of the officials conducting the search the determination of what items are likely to be obscene. In that case a police officer had purchased two films from a bookstore. He then took those films to a Town Justice for a determination of whether reasonable cause to believe the films violated state obscenity laws justified a search. The Justice issued a warrant for other copies of the two films and items which he would independently determine to be obscene. He signed the warrant without listing particular items to be seized and then accompanied officers to the bookstore where he viewed several books, magazines, and films which he determined should be seized. Only later were the particular items which had been seized listed in the warrant.

The State argues, and we agree, that the facts in the case at bar are distinguishable from those in *Lo-Ji Sales* in that the officers did not have an open-ended warrant. They were directed to search for books and magazines "depicting obscene sexual conduct." The terms "obscene" and "sexual conduct" are defined by Ind.Code § 35-30-10.1-1(c) and (d). Hence, the officers conducting the search did not have complete discretion in their determination of what to seize. In addition, the descriptive phrase "rubber sexual devices" is sufficiently specific to restrict the officers' search.

■ Next, Defendant claims that the items seized were not properly seizable. Ind.Code § 35-1-6-1 provides for the seizure of:

"(1) Property which is obtained unlawfully.

(2) Property, the possession of which is unlawful.

(3) Property used or possessed with intent to be used as the means of committing an offense or concealed to prevent an offense from being discovered.

(4) Property constituting evidence of an offense or tending to show that a particular person committed an offense.

(5) Any child that has been abandoned or neglected.

(6) Evidence necessary to enforce statutes enacted to prevent cruelty to or neglect of children."

Defendant argues that the sexual paraphernalia seized does not fall into any of the specifically enumerated categories. However, we agree with the State that the items were "property constituting evidence of an offense or tending to show that a particular person committed an offense" in that the items were corroborative of the victim's testimony. Moreover, Defendant was charged with criminal deviate conduct with a person twelve years of age pursuant to Ind.Code § 35–42–4–2(b)(3), and we find that such statute was "enacted to prevent cruelty to or neglect of children."

■ Defendant further argues that the information upon which Officer Ballard based his affidavit in support of the search warrant was hearsay and that he presented insufficient facts to establish the credibility of the informant. In *Pawloski v. State,* (1978) 269 Ind. 350, 380 N.E.2d 1230, Chief Justice Givan noted that there are two major kinds of informants, professional informants and cooperative citizens, and that the test for determining the reliability of each is different. With regard to cooperative citizens who act as informants, he observed:

"This group includes victims of crime or persons who personally witness a crime. These individuals generally come forward with information out of the spirit of good citizenship and the desire to assist law enforcement officials in solving crime. They are usually one-time informants and no basis exists from prior dealings to determine their reliability. Further, information of this type usually goes to past completed crimes rather than future or continuing crimes. Some jurisdictions have therefore held that informants of this type are to be con-

sidered reliable for the purpose of determining probable cause unless incriminating circumstances exist which cast suspicion upon the informant's reliability." (citations omitted).

*Id.* at 354, 380 N.E.2d at 1232–1233.

In both *Baker v. State,* (1983) Ind., 449 N.E.2d 1085, and *Wells v. State,* (1979) Ind.App., 397 N.E.2d 1250, the victims of the crimes were determined to be credible persons as a consequence of their status as victims. In *Baker,* the Court observed:

"It is reasonable to presume the rape victim and a witness who saw appellant walk away from the victim's burning car to be credible persons, speaking reliably of facts within their knowledge. The probable cause affidavit stated the witness 'informed the affiant of facts and answers to the affiant's questions which were straight forward and which appeared to be true and accurate accounts to the best of their recollections.'"

*Baker v. State,* 449 N.E.2d at 1091. In *Wells,* a bank robbery was reported by a bank official who gave a description of the robber to the police. The appellant argued that the police officer, in his testimony, did not state that he knew the bank officer was a credible person or give the reasons for such belief. The Court of Appeals stated, "It is reasonable for an official of a bank branch which has been robbed to be the person who reports the robbery to the police." *Wells v. State,* 397 N.E.2d at 1257.

Similarly, in the case at bar, the victim of the crime gave a detailed account of the incident forming the basis of the instant charge to police and welfare officers. It is reasonable to believe that she was a credible person. Officer Ballard, in his affidavit, stated that he believed that R.C. was telling the truth because she was implicating her father in the crime of child abuse. Such a statement was sufficient, in conjunction with the circumstances of the case, to comply with the requirements of Ind. Code § 35–1–6–2 (Burns 1979) which provides that "the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants

of the hearsay, and establishing that there is a factual basis for the information furnished."

Defendant further relies upon the holdings of *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. U.S.,* (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. However as the State notes in its brief, the Supreme Court has abandoned the two-pronged test of *Aguilar* and *Spinelli* in favor of a "totality of the circumstances" analysis. The Court held:

> "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."

*Illinois v. Gates,* (1983) 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. We hold that in the case at bar there was a substantial basis for concluding that probable cause existed.

█ Finally Defendant claims that the search warrant was defective and that no probable cause existed for its issuance because it recites that it was "[g]iven under my hand and seal of the Court, this the 2nd day of March, 1981," while the supporting affidavit bears the date March 2, 1982. It is clear, however, that the March 2, 1981 date recited in the search warrant is the result of typographical error and that the warrant was, in fact, executed on March 2, 1982 and supported by affidavit. The victim did not reveal the information which formed the basis of the charge until December 22, 1981. Thereafter, on February 24, 1982, Officer Ballard took a statement from her, and on March 2, 1982 filed his affidavit in support of a search warrant. The language of the warrant includes these words; "the Court having examined said

affidavit and being fully advised in the premises, now finds that there is probable cause for the issuance of this search warrant." The search was conducted on March 2, 1982, and the warrant and the attached affidavit were filed with the Clerk of the Gibson Circuit Court on March 5, 1982. In addition, Officer Ballard testified during the trial that the incorrect date recited in the search warrant was the result of a typographical error and oversight.

## ISSUE II

█ Defendant assigns as reversible error the trial court's admission, over his objection, of evidence regarding the items seized from his home. He argues that the evidence was irrelevant and was introduced for the sole purpose of prejudicing the jury. Following argument by counsel out of the presence of the jury, the trial court ruled that the evidence was admissible for the purpose of corroborating the victim's testimony. The trial court has wide discretion in determining whether proffered evidence is relevant. Absent a clear abuse of that discretion, we will not disturb the court's ruling. *Mayes v. State,* (1984) Ind., 467 N.E.2d 1189, 1194–1195. We find no abuse of discretion here, particularly in light of the admonishment given by the court at defense counsel's request which informed the jurors that the evidence was admitted for the sole purpose of assisting the jurors' determination of the credibility of witnesses.

## ISSUE III

█ Defendant was charged with having committed the instant offense "on or about the 21st day of December 1981." Pursuant to Ind.Code § 35–5–1–1 (Burns 1979) [repealed effective September 1, 1982; amended and recodified at Ind.Code § 35–36–4–1 (Burns Supp.1984)] he filed his notice that he intended to utilize the defense of alibi and that for the date listed in the information he was at his place of employment between the hours of 7:00 a.m. and 6:30 p.m. He also requested that the State give him notice of the exact date and place

which it proposed to present at trial as the date when and the place where the alleged offense occurred. The State responded that it would present evidence to show that the crime was committed "on or about the 21st day of December, 1981" and that the offense took place at the Defendant's home in Princeton, Gibson County, Indiana.

Defendant argues that the State knew that the alleged incident probably occurred on December 16, 1981, and that, consequently, the State's response to the notice of alibi violated the terms of Ind.Code § 35–5–1–2 (Burns 1979) [repealed effective September 1, 1982; amended and recodified at Ind.Code § 35–36–4–2 (Burns Supp. 1984)] because it did not provide a specific statement in regard to the exact date which it proposed to present as the date when the offense occurred.

In *Bruce v. State*, (1978) 268 Ind. 180, 207, 375 N.E.2d 1042, 1058, *cert. denied* (1978) 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662, this Court held:

> "We believe that the purpose of the notice of alibi statute is to narrow the factual issues of time and place to the degree practicable. Consequently, we hold that Section 35–5–1–2 requires the prosecutor to state the time of the offense with such reasonable specificity as the circumstances of the case allow. Hereafter, if the evidence available to the State permits, the prosecutor's statement must specify the time of day as well as the date; conversely, if the evidence does not permit exact determination of the time of the offense more exactly than a period of several days, the State is required only to respond that the offense occurred within such a period."

In the case at bar, the victim knew that she had run away from home on December 22, 1981. She also knew that the offense had occurred within a few days before that on a date when her mother had been called to return to work, but she could not pinpoint the exact day. She had in her statements to the police estimated the time of the offense as from two to six days prior to her leaving home. Such circumstances did not permit a more exact determination of the time of the offense than that given in the response by the State. *See also Thurston v. State*, (1985) Ind., 472 N.E.2d 198, 201.

## ISSUE IV

■ Defendant contends that the trial court erred in admitting into evidence the victim's testimony regarding the Defendant's prior sexual contacts with her. She was permitted to testify, over Defendant's objection, that two and one-half to three years prior to the instant offense the Defendant had shown her a movie with strong sexual content while using a rubber sexual device on her person. Although Defendant concedes that Indiana law permits the admission of evidence of separate, independent, and distinct crimes or bad acts where they are relevant to prove intent, purpose, motive, identity, common scheme or plan, or to demonstrate a depraved sexual instinct, *Grey v. State*, (1980) 273 Ind. 439, 446, 404 N.E.2d 1348, 1352, he argues that none of those purposes apply in the case at bar and that the evidence served only to inflame the passions of the jury. This Court recently addressed a similar contention in *Lewis v. State*, (1983) Ind., 451 N.E.2d 50, 54, observing, "Here the evidence that defendant had committed prior sexual acts with the victim was admissible to show a continuing plan on the defendant's part to exploit and sexually abuse his daughter." We find no error in the admission of the testimony.

## ISSUE V

■ Defendant claims that reversible error occurred when the trial court denied his motion to have the Prosecutrix examined by an independent child psychiatrist. In sex offense cases, a defendant has no right to subject the victim to psychiatric examination. *Page v. State*, (1980) 274 Ind. 264, 410 N.E.2d 1304, 1306. Moreover, Defendant concedes that in a case such as the one at bar, the decision to conduct psychiatric testing is within the sound discretion of the court. We cannot agree with Defendant's claim that the

court abused its discretion in denying the motion. The Prosecutrix was examined on four occasions by child psychiatrist Dr. Juan C. Cabrera who, at trial, was a witness for the defense. His testimony detailed the victim's social, behavioral, and psychological makeup and was favorable to the Defendant.

## ISSUE VI

 Defendant argues that the trial court erred in allowing the State to display to the jury a sexually explicit movie which had been seized from his home pursuant to a search warrant. However, we have determined that the film was properly seized and was properly admitted into evidence. (See Issue I). We have also determined that it was not error to permit the victim to testify regarding the contents of the movie and the circumstances surrounding her viewing of it. (See Issue IV). As a general rule, photographs, films and diagrams are admissible if they illustrate a matter about which a witness has been permitted to testify. *See Coleman v. State*, (1984) Ind., 465 N.E.2d 1130, 1133, and cases cited therein.

## ISSUE VII

 Defendant argues that certain remarks by the trial court during the *voir dire* examination of the prospective jurors constituted a comment on the evidence which inflamed the passions of the potential jurors. The court commented:

"the amended information charges the defendant with the crime of Criminal Deviate Conduct. Now, the evidence in this case, I believe, from what I've been led to believe from previous hearings, will incolve (sic) matters of ... graphically matters of a sexual nature. They will involve matters that possibly people do not normally like to hear discussed in their presence, it will involve graphic representations of such matters and it will be matters that possibly will be odious to you in some respects. This does not, however, change the fact that it has to be done. Now, whereas I do require

everyone to perform their duty, I do not require everyone to perform their duty at the cost of harm to themselves or making them unable to concentrate or be fair.... So let me ask the question, is there anything about the possibility of such graphic evidence, and I'm led to believe that it will be quite graphic and possibly quite odious to some of you as far as some of it that's attempted to be put into evidence ... is there anything about that in and of itself that would cause you a problem sitting here as a juror? ... Does anyone here believe that matters of a sexual nature would be so odious to you to be discussed in your presence that you would not be able to be fair?"

We find no merit in Defendant's argument. The trial court was attempting to insure that Defendant received a fair trial by determining whether any juror would be prejudiced against him because of the nature of the charge and the type of evidence which would be introduced. The Defendant requested a mistrial or, in the alternative, an admonishment to the jury. Following a discussion on the motion, the following exchange occurred:

"Court: Do you wish a ruling on your motion.

Defense Counsel: I don't want a ruling, I'm asking the Court to inform them."

The trial court then informed the jury panel that the court does not determine what the evidence is and does not know what evidence will be proffered. He further informed the potential jurors that it is up to the jury to decide the weight of any evidence and that it could reject evidence. Defendant received the admonishment which he requested. We find no error.

 In his brief, Defendant also challenges the sufficiency of the evidence to sustain his conviction and the trial court's refusal to give four of his tendered instructions. In view of the fact that this case is being reversed and remanded for a new trial, we decline to address Defendant's contentions other than to note that we find no merit in either of his claims.

The judgment of the trial court is reversed, and this cause is remanded for a new trial.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., concurs in result.