**David BROCK, Appellant**
**(Defendant Below)**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below)**

**No. 49S00–8801–PC–166.**

Supreme Court of Indiana.

July 14, 1989.

Kevin McShane, Van Treese, Adams, Lockhart & McShane, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Marion Superior Court Criminal Division VI, Defendant–Appellant David Brock was convicted of Count I, Dealing in Cocaine Greater Than Three (3) Grams, a Class A felony, for which he received a term of twenty-five (25) years with five years suspended; Count III, Possession of Cocaine Greater Than Three (3) Grams, a Class C felony, for which he received a term of five (5) years; Count IV, Possession of LSD, a Class D felony, for which he received a term of two (2) years; Count V, Possession of Diazepam, a Class D felony, for which he received a term of two (2) years; and Count VI, Possession of Marijuana Over Thirty (30) Grams, a Class D felony, for which he received a term of two (2) years. He was found not guilty of Count II, Conspiracy to Deal in Cocaine Greater Than Three (3) Grams, a Class A felony. The trial court ordered the sentences be served concurrently and found mitigating circumstances in the fact Brock lacked a prior criminal history and had served his country.

The issues raised by Brock in this direct appeal are consolidated for our review as follows:

1. trial court error in denying Brock's Motion to Disclose Identity of Confidential Informant and further denying his Motion to Suppress Evidence based on the failure to disclose identity of the confidential informant;

2. denial of Brock's Motion for Mistrial; and

3. error in admitting into evidence statements made by Brock.

The facts show that on May 20, 1986, narcotics officers of the Indianapolis Police Department obtained a search warrant for Brock's residence at 3658 Yellow Poplar Court, Marion County, Indianapolis, Indiana. Upon execution of the search warrant, officers found and seized approximately one hundred ten (110) grams of suspected cocaine, marijuana in an amount of over thirty (30) grams, and small quantities of LSD, hashish, and Diazepam. Also seized was a total of $8,096.00 in United States currency, a set of triple beam scales, fifteen (15) clear plastic "baggies," other assorted drug paraphernalia, and several firearms. Brock and Trent Summers were placed under arrest at the scene. The search warrant was issued on the affidavit of Indianapolis Police Officer Detective Gary Walton. He had good cause to believe that a controlled substance, to-wit, marijuana (cannabis) was being kept, used, and sold from the residence in question and that said residence was under Brock's control. Walton stated in the affidavit he based his belief on information from a confidential informant who came to him within the seventy-two (72) hours before May 20, 1986. Walton stated this confidential, cred-

itable and reliable informant came personally to him and said that within the 72 hours prior to May 20, 1986 he/she was personally at the residence in question and observed a substance in Brock's possession he/she believed to be marijuana (cannabis). He/she informed the officer that Brock stated the substance in his possession was, in fact, marijuana (cannabis) and was for sale. Officer Walton stated he had received reliable information from this informant on previous occasions. He further stated that revealing the informant's identity could endanger his/her life and destroy any further use of the informant.

## I

■ The confidential informant was not involved in a controlled buy from Brock nor was the informant a participant or material witness in the offenses charged. The informant's only involvement was that he/she, on one occasion, gave information about Brock to Detective Walton. Brock claims the trial court erred in denying his Motion for Disclosure because the identity of the informant was necessary to support his Motion to Suppress. In his Motion to Suppress, Brock claimed the probable cause affidavit contained false information alleging either that the confidential informant did not exist and therefore the officer was falsely swearing, or that the confidential informant had lied to the police officer, therefore giving no substance to the probable cause affidavit. These allegations by Brock were based on facts testified to in the motions for disclosure and suppression by Brock and his supporting witnesses which proved it was impossible for the informant to have seen him at his residence within the seventy-two (72) hour period preceding May 20, 1986, and to have discussed with him the sale and possession of marijuana. Brock attempted to show a confidential informant could not have been in his home during the time period in question. He stated that he drove his truck from Indianapolis to the State of Florida on May 14, 1986 and arrived back home from Florida at approximately 10:30 a.m. on May 19, 1986. He produced receipts showing he had been in Jackson, Georgia, purchasing clothing, on May 14, 1986, and in Valdosta, Georgia, on May 15, 1986, having his automobile repaired. He claimed that from 10:30 a.m. on May 19 until 7:00 or 7:30 a.m. on May 20, the date of his arrest, he slept because he had driven non-stop from Florida. He claimed when he awoke at 7:00 or 7:30 a.m. on May 20 the only person he saw in his home was his girlfriend, Jan Hamilton. He saw no marijuana in his home and did not offer any for sale between 7:00 a.m. and 12:00 noon, the time of his arrest. From 7:00 a.m. to 12:00 noon on May 20 he had gone out to eat, stopped at a motorcycle shop, and returned home at about 11:00 a.m. Jan Hamilton corroborated Brock's story, stating that in the late hours of May 19 or early hours of May 20 she attempted to awaken Brock to play cards but could not awaken him. Several friends she identified had come over to play cards on that evening and she stated she saw none of them with marijuana. One Louis Flynn stated he was a visitor to the house late on the 19th and into the early hours of May 20th and Brock was asleep the entire time he was there. Trent Summers also testified he saw no marijuana in the house within seventy-two hours prior to the execution of the search warrant.

In opposition to the Motion to Suppress the State called Detective Gary Walton. He testified he *"Mirandized"* both Brock and Summers and they cooperated with him. He stated he gave the *Miranda* warnings and advices to Brock on two different occasions, Brock acknowledged he understood them and that he was willing to cooperate with him. Although no written waiver was taken, Walton testified that Brock, along with Summers, went throughout the house, particularly in their own bedrooms, and produced controlled substances and paraphernalia for them. At the conclusion of the hearings the trial court denied both motions, and found with regard to the Motion to Suppress that there was ample opportunity for an informant to have performed in exactly the way Detective Walton testified.

Brock argues on appeal the trial court erred in denying his Motion to Suppress the

evidence found as a result of the execution of the search warrant, alleging the warrant was invalid because the probable cause affidavit contained false material allegations or was made in reckless disregard of the truth. It is well-settled that where the State has obtained a magistrate's determination of probable cause, a presumption of validity exists for the warrant. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 899. To prevail upon a claim that the affidavit for a search warrant contained information known to be false, the burden is upon the defendant to show that relevant matter as expressed in the affidavit was untrue. *Id.; Everroad v. State* (1982), Ind., 442 N.E.2d 994, 1005. In reviewing this question, we do not weigh the evidence nor judge the credibility of witnesses. The trial court, as trier of fact, weighs the evidence and judges the credibility of witnesses. *Snyder v. State* (1984), Ind.App., 460 N.E.2d 522, 529. Here, the evidence submitted by the defense went no further than to show a conflict between Brock's evidence and that of the State. The trial court hearing the motions to suppress and to disclose was not required to believe Brock's evidence but rather had the duty to judge its materiality and to give it the weight it deserved. The prosecution points out that two of the witnesses, shown by Brock's evidence to have been at his home late on the 19th, did not testify at the hearing. Brock could have been in Georgia on the 14th and 15th and returned to Indianapolis by noon on the 17th. He has failed to show that any false statement was contained in the search warrant affidavit. The well-settled general policy in Indiana regarding disclosure of the identity of confidential informants is that disclosure is to be prevented unless the defense can demonstrate that disclosure is relevant and helpful or is necessary for a fair trial. *Powers v. State* (1982), Ind., 440 N.E.2d 1096, 1103, *cert. denied* (1983), 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808; *Randall v. State* (1983), Ind., 455 N.E.2d 916, 926–27. We conclude Brock has failed to meet his burden of demonstrating the need for disclosure as he has not established that disclosure was necessary to ensure a fair trial. Further, Brock has failed to show that the affidavit for a search warrant was so clearly false it invalidated the Magistrate's determination of probable cause. *Johnson, supra; Everroad, supra; Snyder, supra.* No error was presented on this issue.

## II

■ Brock and Summers were jointly tried without objection from either of them. During the trial Officer Kraeszig, in testifying about the search of Brock's home, stated over objection that co-defendant Summers said to the police: "You guys were lucky that we didn't decide to shoot it out with you," and further said they could have held off the police for a long time, referring to the large quantity of firearms in Brock's home at time of the execution of the search warrant and the arrest. Brock concedes no threatening statements were attributed to him by Detective Kraeszig or any other police officer. The testimony clearly indicated the statements were made by Summers. Brock claims the prejudicial impact of Summers' statement outweighed its probative value, if any, and placed Brock in grave peril before the jury. Brock claims the prejudicial reference to the plural "we" was not excised so as to exclude him from the suggestion of violence against the police. He claims the court should have severed his trial from Summers' or granted a mistrial based on Ind.Code § 35–34–1–11(b) which provides, in pertinent part, as follows:

Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect:

(1) a joint trial at which the statement is not admitted into evidence;

(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) a separate trial for the moving defendant.

Brock argues since co-defendant Summers did not testify at trial, he was unable to cross-examine him about the utterance and since Brock himself chose not to testify, the jury was deprived of any rejection of Summers' statement. However, Summers in no way attributed any statement or act to Brock. It was obviously a statement concerning the immediate circumstances of the search and arrest. There was no inference that Brock had taken part in any consideration of attempting to hold off the police with firearms. Summers and Brock were not the only ones present. There were other individuals in the residence at the time the police entered.

Brock seems to infer that admitting Summers' statement violated his right to confrontation pursuant to *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 and *Carter v. State* (1977), 266 Ind. 140, 143, 361 N.E.2d 145, 147. *Bruton* holds a defendant is deprived of his right of confrontation when a non-testifying co-defendant's confession, which on its face incriminates the defendant, is admitted at their joint trial. The United States Supreme Court, however, has declined to extend *Bruton* to situations such as this one, which do not involve facially incriminating declarations. *See e.g., Richardson v. Marsh* (1987), 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176. In *Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1060, *cert. denied* (1988), — U.S. —, 109 S.Ct. 330, 102 L.Ed.2d 347, this Court found that similar statements attributed to Smith's co-defendant did not facially incriminate him and did not present reversible error under *Richardson* and *Bruton*. Summers' statement made no reference to any facts which formed the basis of the charges against Brock concerning drugs or to whom any drugs belonged. It was clearly presented in the evidence that the remark was that of Summers and did not involve Brock. Accordingly, since the content of Summers' statement did not facially incriminate Brock, there are no grounds for reversal on this issue.

### III

■ Finally, Brock claims the trial court erred in admitting into evidence his statements and conduct claiming the State did not show a valid waiver of his *Miranda* rights. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The State responded that the evidence adduced at trial showed Brock voluntarily and intelligently waived his rights when he made the statements and undertook to show the officers where drugs were located. Brock does not deny he was advised of his *Miranda* rights on two occasions and acknowledged he understood them. He claims there is no proper showing of a waiver, however, since he did not sign a written waiver form. There is no merit to Brock's contention. As a reviewing court we look to the evidence supporting the trial court's ruling to determine if there is substantial and probative evidence sufficient to sustain it. Furthermore, the admissibility of a confession or statement is determined by examining the totality of the circumstances surrounding the giving of the statement to ascertain whether or not it was given voluntarily. *Johnson v. State* (1987), Ind., 513 N.E.2d 650, 651. The voluntariness and intelligence of a waiver of rights is reviewed under the same totality standard. *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed. 2d 410, 421; *Speed v. State* (1986), Ind., 500 N.E.2d 186, 188. A signed rights waiver form is not dispositive of the issue, and further, an express written or oral waiver of rights is not required to establish a valid waiver. *Shelton v. State* (1986), Ind., 490 N.E.2d 738, 741; *Patton v. State* (1986), Ind., 501 N.E.2d 436, 438; The evidence showed here that after Brock was given his *Miranda* rights and advices and acknowledged that he knew and understood them, he cooperated with the police by taking them through the apartment and showing them the drugs and paraphernalia present. Knowledge and voluntariness was sufficiently demonstrated.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.