## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2018, 8:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Michelle F. Kraus<br>Fort Wayne, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>George P. Sherman<br>Supervising Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark C. Morr,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 31, 2018<br><br>Court of Appeals Case No.<br>57A03-1710-CR-2436<br><br>Appeal from the Noble Superior Court<br><br>The Honorable Robert E. Kirsch, Judge<br><br>Trial Court Cause No.<br>57D01-1701-F2-1 |

**Bailey, Judge.**

# Case Summary

Mark C. Morr ("Morr") appeals his convictions for Dealing in Methamphetamine, as a Level 2 felony,[1] Dealing Marijuana, as a Level 5 felony,[2] Maintaining a Common Nuisance, as a Level 6 felony,[3] and Theft, as a Level 6 felony,[4] and his adjudication as a habitual offender.[5] We affirm in part, reverse in part, and remand for re-sentencing.

# Issues

Morr presents three issues for review:

> I.  Whether the trial court improperly admitted evidence found during a search of Morr's home because the search warrant was unsupported by probable cause;

> II.  Whether sufficient evidence supports the Theft conviction; and

> III.  Whether sufficient evidence supports the habitual offender adjudication.

---

[1] Ind. Code § 35-48-4-1.1(e)(1).

[2] I.C. § 35-48-4-10(d)(2)(A)(i).

[3] I.C. § 35-45-1-5(c).

[4] I.C. § 35-43-4-2(a)(1)(B)(i).

[5] I.C. § 35-50-2-8(d).

# Facts and Procedural History

[3] Late in the evening of December 28, 2016, Kendallville Police Officer Matthew Haber ("Officer Haber") initiated a traffic stop after observing a vehicle turn without a signal and then cross the fog line. The driver, Boni Coffelt ("Coffelt") was arrested upon the discovery of drug paraphernalia and methamphetamine in the vehicle. Coffelt produced marijuana that had been hidden in her clothing and expressed a willingness to cooperate with authorities. Ultimately, Coffelt gave police statements identifying Morr as her drug supplier.

[4] During the early morning hours of December 29, 2016, law enforcement officers obtained a warrant to search Morr's residence and executed the warrant. The search yielded large quantities of methamphetamine and marijuana,[6] sawed-off shotguns, numerous other weapons, drug paraphernalia, and a ledger with names and amounts.

[5] On January 5, 2017, the State of Indiana charged Morr with Dealing in Methamphetamine, Dealing Marijuana, Maintaining a Common Nuisance, and Theft. On February 14, 2017, the State alleged that Morr is a habitual offender. Morr filed a motion to suppress all evidence obtained in the execution of the search warrant at his residence. On March 3, 2017, the trial

---

[6] Officers recovered a "barrel of marijuana" and containers and packages amounting to at least eighteen pounds of suspected illicit drugs. (Tr. Vol. III, pg. 73.) However, a precise weight is unknown because forensic scientists stopped testing the subject materials after analyzing several pounds that testing revealed to be methamphetamine and marijuana.

court conducted an evidentiary hearing on the motion to suppress. At that hearing, the trial court heard testimony from Officer Haber, Kendallville Sheriff's Department Sergeant Chris Moriarity ("Sergeant Moriarity"), Coffelt, and Morr's girlfriend, Samantha ("Sam") Souder. The motion to suppress was denied.

[6] On August 29, 2017, Morr was tried in a bench trial, convicted as charged, and found to be a habitual offender. On September 22, 2017, the trial court sentenced Morr to twenty-five years imprisonment for Dealing in Methamphetamine, enhanced by eight years due to Morr's possession of a sawed-off shotgun, and further enhanced by twelve years due to his status as a habitual offender. The trial court also imposed concurrent sentences of six years for Dealing in Marijuana and two and one-half years each for Maintaining a Common Nuisance and Theft, resulting in an aggregate sentence of forty-five years. Morr now appeals.

# Discussion and Decision

## Validity of Search Warrant

[7] Morr asserts that the trial court should have granted his motion to suppress. Because Morr appeals following trial, the issue is more properly framed as whether the trial court abused its discretion by admitting the evidence obtained in the execution of the search warrant. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind.

1997).  We reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the trial court.  *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997).

[8]     According to Morr, the trial court erred in admitting all items of incriminating evidence found during the search of his home because the search warrant was not supported by probable cause.  He argues that the requesting officer's affidavit "failed to advise the Judge of material facts" and included "false and misleading representations [made] with a reckless disregard for the truth," and that these deficiencies "thereby violated" his rights under the Fourth Amendment to the United States Constitution and Article 1, Sec. 11 of the Indiana Constitution.  Appellant's Brief at 11.

[9]     More particularly, Morr complains that the affidavit, executed by Sergeant Moriarity, did not include Officer Haber's opinion that Coffelt had been untruthful during her traffic stop or reveal Coffelt's drug possession or her stated motivation for cooperation, that is, she feared her child's father would deny her visitation if she was incarcerated.  And Morr claims that the issuing judge was misled by uncorroborated statements that Coffelt had been a reliable informant in the past and had recently provided information against her penal interests.

[10] When the sufficiency of a search warrant affidavit is challenged under the Fourth Amendment,[7] the reviewing court exercises its duty '"simply to ensure that [there was] a substantial basis for finding probable cause."' *Watkins v. State*, 85 N.E.3d 597, 603 (Ind. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The reviewing court owes "great deference" to the initial probable-cause determination, and will not invalidate warrants by interpreting probable cause affidavits "in a hypertechnical, rather than a commonsense, manner." *Id.* (quotation omitted).

[11] Article 1, Section 11 of the Indiana Constitution contains language nearly identical to that of the Fourth Amendment. The constitutional principles are codified in Indiana Code Section 35-33-5-2, detailing the information to be contained in an affidavit for a search warrant. *Sparks v. State*, 100 N.E.3d 715, 720-21 (Ind. Ct. App. 2018). When law enforcement seeks a warrant based upon hearsay information, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

---

[7] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

> (2) contain information that establishes that the totality of the
> circumstances corroborates the hearsay.

I.C. § 35-33-5-2(b). The trustworthiness of hearsay for proving probable cause can be established where (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted; however, the list is non-exhaustive. *Sparks*, 100 N.E.3d at 721.

[12] Sergeant Moriarity's affidavit provided, with respect to Coffelt's representations and reliability, the following:

> 1. At approximately 11:12 p.m. on December 28, 2016, officers with the Kendallville Police Department were conducting an investigation of an impaired driver identified as Bonnie [sic] Coffelt. While conducting the investigation Mrs. Coffelt informed officers of the location of large amounts of crystal methamphetamine.
>
> 2. Mrs. Coffelt reported that on Tuesday December 20, 2016 she was present at 11405 N. State Road 5, Ligonier, Noble County, Indiana when 7 pounds of crystal methamphetamine was delivered to a Mark Morr, whom resides at this residence.
>
> 3. Mrs. Coffelt further advised that Mr. Morr mad[e] a trip to California to obtain what she believed to be more narcotics and returned on or about December 26, 2016. Mrs. Coffelt stated that Mr. Morr has asked her to make the trips with him or for him to California with the intent to return with narcotics to the Noble County area.

4. Mrs. Coffelt reported that on Tuesday December 27th she was present and observed an "8 ball" (approx. 3.7 oz) of crystal meth at the above location.

5. Mrs. Coffelt stated that on Tuesday December 28, 2016 she was met by Mark Morr and a Sam Sauder, with 2 grams of methamphetamine at a motel in Ligonier where the 3 of them consumed the methamphetamine.

6. In the past week Mrs. Coffelt stated that she had purchased ¼ oz of Methamphetamine from the [sic] Mark Morr.

7. I have also been informed that there is an ongoing narcotics investigation into the residence and Mr. Morr, and that the investigation corroborates many of Mrs. Coffelt's statements. Further, I believe the statements of Mrs. Coffelt to be truthful and credible because she has made these statements against her own penal interests, and because she has given credible information in the past in other narcotics investigations.

(State's Ex. 1, pgs. 1-2).

[13] A probable cause affidavit must include "material facts" known to law enforcement. *Ware v. State*, 859 N.E.2d 708, 718 (Ind. Ct. App. 2007), *trans. denied*. "The typical formulation of [omitted] 'material' facts is that they cast doubt on the existence of probable cause." *Query v. State*, 745 N.E.2d 769, 772 (Ind. 2001). Although it may not be practical to include all information related to an investigation in a probable cause affidavit, "the best course for police to

follow is to include any information that could conceivably affect a probable cause determination." *Ware*, 859 N.E.2d at 719-20.

[14] When material information is omitted from a probable cause affidavit, such omission will invalidate a warrant if (1) the police omitted facts with the intent to make the affidavit misleading or with reckless disregard for whether it would be misleading, and (2) the affidavit supplemented with the omitted information would have been insufficient to support a finding of probable cause. *Id.* at 718. It has been recognized that omissions from a probable cause affidavit are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Gerth v. State*, 51 N.E.3d 368, 375 (Ind. Ct. App. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3rd Cir. 2000.).

[15] Morr argues that a reasonable jurist would have desired to know information such as: Coffelt had made furtive movements when the traffic stop was initiated, she produced marijuana out of her pants, she was allegedly untruthful in response to Officer Haber's inquiries,[8] and she offered to help only after her arrest and in conjunction with expressing concern over her parental visitation rights.

---

[8] Officer Haber had included in his police report his suspicion that Coffelt had given untruthful responses to some of his inquiries during the traffic stop.

[16]     The text of the affidavit plainly indicates that Coffelt was a drug user apprehended upon suspicion of driving while impaired.  A reasonable jurist would likely infer that Coffelt was in legal jeopardy and highly motivated to escape the consequences of her actions.  Indeed, at the suppression hearing, Officer Haber testified that he did not relay his opinion of Coffelt's veracity to Sergeant Moriarity because it is "common knowledge" that drug users lie when questioned about their activities. (Tr. Vol. II, pg. 45.)  Officer Haber explained that he had transferred Coffelt to Sergeant Moriarity to make a formal statement and "told what was important" to Sergeant Moriarity.  (*Id.* at 44.)  He did not address Coffelt's conduct during the traffic stop or her expressed parental concerns.  Although the affidavit did not include all details known of Coffelt's background and current circumstances, the affidavit did not portray her as a concerned citizen who provided information without personal motivation.[9]  Morr has made no showing that Sergeant Moriarity omitted a fact with intent to mislead or with reckless regard or that an affidavit supplemented with the additional information would have been inadequate.

[17]     Beyond challenging the omission of facts, Morr challenges the inclusion of others.  He claims that Sergeant Moriarity made false statements by averring that Coffelt had provided credible information in the past and by describing

---

[9] There are two general categories of informants: professional informants and cooperative citizens.  *Clifford v. State*, 474 N.E.2d 963, 969 (Ind. 1985).  An eyewitness or crime victims may be considered presumptively reliable unless circumstances exist which call into question their credibility.  *See Pawloski v. State*, 269 Ind. 350, 380 N.E.2d 1230, 1232-33 (1978).

criminal activity alleged by Coffelt without attempting to corroborate the allegations. A warrant issued by a trial judge or magistrate is presumptively valid; thus, when a defendant claims that the search warrant contained information known to be false, he bears the burden of showing that the relevant matter expressed in the affidavit was untrue. *Brock v. State*, 540 N.E.2d 1236, 1239 (Ind. 1989). In reviewing the question, we do not weigh the evidence nor judge the credibility of witnesses, as these functions are entrusted to the trial court. *Id.*

[18] Citing *Gerth v. State*, 51 N.E.3d at 373, Morr argues that the statement of Coffelt's past provision of information is an example of a "bare bones" or "generic" representation generally regarded as insufficient to establish an informant's credibility. However, Morr concedes that Coffelt and her husband had in the past worked with law enforcement officers assigned to investigate illegal drug activity. He points to one officer's assessment that Coffelt's husband had been the more valuable informant and the officer had evaluated some of Coffelt's information with skepticism. Morr's argument in this regard presents a classic request for reweighing of evidence, an invitation we reject. *Brock*, 540 N.E.2d at 1239.

[19] Morr additionally suggests that Coffelt's credibility was questionable because she was caught "red-handed" with "drugs in her possession," Appellant's Brief at 14, and did not provide statements that were "against her own penal interests," (State's Ex. 1), as attested to by Sergeant Moriarity. Upon her arrest, Coffelt extracted marijuana from inside her clothing and gave it to police.

Coffelt had been driving a vehicle in which methamphetamine was found. Although Coffelt claimed that the methamphetamine belonged to her passenger, it is apparent that she was proverbially "caught red-handed" with contraband and the State possessed information to use against her. Nevertheless, Coffelt provided additional self-incriminating information when she admitted to purchasing methamphetamine from Morr in the recent past and to using methamphetamine provided by Morr in a local hotel room. And Sergeant Moriarity testified at the suppression hearing that Coffelt admitted to selling methamphetamine for a profit on two prior occasions. In short, the trial court had a basis upon which to find that Coffelt provided statements against her penal interests; the weight to be assigned and the credibility determination were within its purview. *Brock*, 540 N.E.2d at 1239.

[20] We acknowledge that, even where an informant has been proven reliable in the past, the requirement for corroboration is not eliminated. *Cartwright v. State*, 26 N.E.3d 663, 669 (Ind. Ct. App. 2015). Here, however, the record does not support Morr's claim that the police simply relied upon Coffelt's accusations against Morr without any efforts to corroborate. Rather, the police conducted a background check, verified Morr's address, and discovered that Morr already had "pending charges" related to narcotics activity. (Tr. Vol. II, pg. 76.) In sum, Morr has failed to show that a false statement, or one made with reckless disregard for the truth, was contained in the affidavit supporting the warrant to search Morr's residence.

[21] The search warrant was based on a practical, commonsense decision that there was a fair probability that contraband or evidence of a crime would be found in Morr's residence. The warrant was supported by probable cause and the trial court did not err in admitting the evidence obtained in its execution.

## Sufficiency of the Evidence – Theft

[22] Morr challenges the sufficiency of the evidence to support his conviction for theft of firearms, contending that there was no evidence of his taking the items. He also points out that police officers discovered that the guns were stolen only after a serial numbers check and thus a person other than the thief would have no reason to know that they were stolen.

[23] When reviewing the sufficiency of the evidence to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider the evidence supporting the judgment and the reasonable inferences that can be drawn from such evidence and will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[24] To convict Morr of Theft, as a Level 6 felony, as charged, the State was required to prove beyond a reasonable doubt that Morr knowingly or intentionally exerted unauthorized control over firearms of James Croy ("Croy"), having a value of at least $750.00, with intent to deprive Croy of the property's use or value. The State is required to offer evidence to show that the

defendant either stole an item in question or knew that it was stolen. *See Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010) ("the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft.")

[25] Sergeant Moriarity testified that a serial numbers search revealed that some of the guns recovered in Morr's residence had been reported as stolen. He acknowledged that he did not know how long the guns had been located at Morr's property, who put them there, or who took them from the owner's location. Croy testified that twenty-two weapons had been stolen from his residence; he examined photographs produced at trial and identified some of the guns depicted as his property. Because the State did not produce evidence from which the fact-finder could conclude beyond a reasonable doubt that Morr stole the guns or knew them to be stolen, this conviction must be reversed for insufficient evidence.

## Habitual Offender Adjudication

[26] Morr was alleged to be a habitual offender under Indiana Code Section 35-50-2-8(d)(2) (2015), providing that a person convicted of a felony may have his or her sentence enhanced if:

> (1) the person has been convicted of three (3) prior unrelated felonies; and

> (2) if the person is alleged to have committed a prior unrelated:

(A) Level 5 felony;

(B) Level 6 felony;

(C) Class C felony; or

(D) Class D felony;

Not more than ten (10) years have elapsed between the time the person was released from imprisonment, probation, or parole (whichever is latest) and the time the person committed the current offense.

[27] Morr claims that his habitual offender adjudication must be reversed because his adjudication rests on proof of convictions of three Class D felonies, one of which was committed more than ten years prior to the instant offenses. Specifically, the State adduced evidence that Morr had been convicted of Criminal Recklessness, Intimidation, and Unlawful Sale of a Precursor, all as Class D felonies. The judgment upon Morr's plea of guilty to Criminal Recklessness was entered in May of 1999 and he had served his sentence more than ten years before the December 2016 crimes.

[28] In *Johnson v. State*, 87 N.E.3d 471 (Ind. 2017), our Indiana Supreme Court interpreted the language under which Morr was alleged to be a habitual offender.[10] The Court found the statutory language to be "unambiguous" and

---

[10] At the time of Morr's trial, the parties were aware that the *Johnson* case was pending. The State pursued the habitual offender adjudication with the agreement that, if *Johnson* was decided to require each of the

declared: "the plain meaning of the 2015 version of subsection 8(d) requires that each lower-level felony – namely a Level 5, Level 6, Class C, or Class D felony – the State uses to establish subsection 8(d)(1) must meet the ten-year requirement found in subsection 8(d)(2). *Id.* at 473. Because the State relied upon a felony outside the ten-year requirement to establish Morr's habitual offender status, his adjudication must be reversed.

[29] In *Coble v. State*, 523 N.E.2d 228, 229 (Ind. 1988), our Supreme Court held that when a habitual offender enhancement is vacated on appeal, the trial court has the authority on remand to resentence the defendant on the underlying felony to which the habitual enhancement had been attached. We remand to allow the trial court the opportunity for resentencing.

# Conclusion

[30] Morr did not present evidence sufficient to overcome the presumption of the search warrant's validity. His conviction for Theft and his habitual offender adjudication are vacated. Finally, we remand for resentencing.

[31] Affirmed in part, reversed in part, and remanded.

Mathias, J., and Bradford, J., concur.

---

prerequisite felonies to meet the ten-year requirement, the State would not oppose a request from Morr to vacate his adjudication. The language of the habitual offender statute has since been amended, in 2017, to provide "not more than ten (10) years have elapsed between the time the person was released from imprisonment, probation, or parole (whichever is latest) for at least one (1) of the three (3) prior unrelated felonies and the time the person committed the current offense." I.C. § 35-50-2-8(d).